**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:06CR351

KALEEM J. CARTER

**MEMORANDUM OPINION**

This matter is before the Court on the MOTION TO SUPPRESS (Docket No. 9) filed by the Defendant, Kaleem J. Carter. For the reasons set forth below, the motion is denied.

**BACKGROUND**

On June 19, 2006, police officers saw Carter's vehicle and another vehicle parked at or near the St. John's Wood Apartments in Richmond, Virginia.[1] The occupants of the vehicles appeared to be moving objects from one trunk to the other. Tr. At 11. The police officers who made those observations passed them along to Detective Robert Sprinkle, who along with a colleague began following Carter in an unmarked police car. Sprinkle testified that, at the time, there was "[f]airly moderate traffic coming eastbound [on Jahnke Road] . . . . [and] traffic going westbound in the direction we were going. Moderate to light, I would say." Id. at 10. There were vehicles nearby both in the eastbound and the westbound lanes. Id. at 16-17.

---

[1] See Transcript of Proceedings as to Kaleem J. Carter Held on February 28, 2007 (hereinafter "Tr.") (Docket No. 16) at 11.

As Carter's car, which was traveling west on Jahnke Road, approached the intersection of Jahnke Road and St. John's Wood Drive, it moved from a driving lane into the left turn lane.  No left turn signal was given.  Id. at 8.  Sprinkle estimated that when Carter's car entered the turn lane, Sprinkle's car was about 40 yards behind him.  Id. at 8-9.  There was no traffic light at the intersection, so as Carter waited for the eastbound traffic to clear, Sprinkle pulled immediately behind Carter.  Id. at 9.  Carter then made a left-hand turn onto St. John's Wood Drive, again without using the turn signal.  Sprinkle followed, and pulled Carter over both for failing to signal when he entered the turn lane and when he turned on to St. John's Wood Drive.  Id. at 17-18.  Sprinkle testified that he believed that both turns violated Virginia traffic law.  Id. at 15-16.

Sprinkle testified that, when he looked into the car, he saw what he estimated to be two or three grams of marijuana in the cup holder that was between the passenger and driver seat.  Id. at 19.  There also was marijuana on the passenger's sweater.  The car's occupants were ordered out and were arrested.  Id. at 21.  Sprinkle then searched the car's passenger compartment.  He found more marijuana on the floorboard between the passenger seat and the door, and a quarter ounce (7 to 9 grams) of marijuana underneath the passenger seat.  Id. at 20.

Sprinkle continued to search the car. He testified that, as he searched the back seat area, "[t]here was a very strong odor of marijuana coming from the vehicle. That led us to believe that there was more marijuana hidden somewhere in the trunk . . . ." Id. at 21-22. Without the Defendant's permission, the officers opened the trunk and found a large amount of marijuana and a handgun with an obliterated serial number. The yield of the searches comprises the basis for the charges on which Carter was indicted.

**DISCUSSION**

Carter asks the Court to exclude all the evidence discovered in the car on ground that the initial traffic stop was unconstitutional, or, alternatively, to exclude the evidence discovered in the trunk on the ground that Sprinkle's discovery of the contents of the trunk was the fruit of an unconstitutional search.

**A. The Stop**

Carter urges that Sprinkle's initial stop of the car violated the Fourth Amendment because neither turn actually violated Virginia law. That, says Carter, is because Va. Code § 46.2-848, governing traffic signals, only requires drivers to use a turn signal "whenever the operation of any other vehicle may be affected" by the turn. The turns here, says Carter, were not illegal because they did not affect Sprinkle's operation of his own

car and because the "presence of other traffic on the road is not a sufficient circumstance to demonstrate that traffic may be affected" by Carter's failure to use his turn signal.[2] Because it does not appear that his turns <u>actually affected</u> the operation of any other vehicles, Carter reasons that Sprinkle did not have probable cause to make the traffic stop.

Carter's argument misunderstands the probable cause standard as it applies to traffic stops. An automobile stop, of course, is a seizure of a person, so to be constitutional, it must comply with the Fourth Amendment's requirement "that it not be 'unreasonable' under the circumstances." <u>Whren v. United States</u>, 517 U.S. 806, 809-10 (1996). To be reasonable, the stop "must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." <u>United States v. Hassan El</u>, 5 F.3d 726, 729 (4th Cir. 1993).

In other words, an officer may legally stop a vehicle for a traffic violation if he or she has probable cause to believe that a traffic violation has occurred. <u>Whren</u>, 517 U.S. at 810. An officer has probable cause to believe that a traffic violation has occurred if he or she "objectively has a reasonable basis for believing that the driver has breached a traffic law." <u>United States v. Thomas</u>, 93 F.3d 479, 485 (8th Cir. 1996).

---

[2] Defendant's Reply to Government's Response to Defendant' Motion to Suppress (Docket No. 18) at 4.

While the probable cause standard requires that an officer have an objective basis for believing a violation has occurred, it does not require that the officers be correct in the judgment that a traffic violation actually occurred. The Supreme Court pointed out in United States v. Spinelli that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." 393 U.S. 410, 419 (1969). The question therefore is not so much whether a defendant actually committed a violation of the traffic law. Rather, the question is whether the officer who stopped his vehicle had probable cause to believe that a traffic violation had occurred.

In this case, Sprinkle testified that he was behind Carter's car when it entered the turn lane without signaling; that he was immediately behind the car when it made the left turn onto St. John's Wood Road without signaling; that traffic was moderate to light in the area; and that, after Carter's car entered the turn lane, it had to wait for opposing traffic to pass before it actually could execute the full left turn--all without using a turn signal. Given these facts, there existed the reasonable probability that one of the cars, including Sprinkle's, "may [have been] affected" by Carter's turn, and that Carter's turn violated the law. See Va. Code 46.2-848. Sprinkle's stop was reasonably premised on that possibility. Whether or not, as Carter urges, any

5

other cars actually were affected by his failure to give the turn signal is of no constitutional moment in assessing the probable cause issue.

For the foregoing reasons, the motion to exclude evidence on the ground that the stop of the car violated the Constitution is denied.

**B.   The Search**

Assuming the traffic stop was legal, Carter does not contest his arrest or the search for marijuana in the passenger compartment.  However, Carter argues that Sprinkle's search of the trunk violated the Fourth Amendment and, therefore, that the gun and additional marijuana found in the trunk should be excluded as evidence.

Police may make a warrantless search of an entire vehicle incident to arrest, including the trunk, if they have probable cause to believe that the trunk contains contraband.[3]  Carroll v. United States, 267 U.S. 132 (1925).  In this case, Sprinkle knew

---

[3]  Police may search a car's entire passenger compartment incident to arrest without probable cause.  See, e.g., United States v. Baker, 47 F.3d 691 (5th Cir. 1995).  Police may only search the trunk incident to arrest, however, if there are exigent circumstances, if the police are conducting an inventory search, or if police have probable cause to believe that they will uncover a crime or contraband in the trunk.  See, e.g., United States v. Miles, 449 F.2d 1272 (10th Cir. 1971). There is no suggestion here of exigent circumstances, or that this was an inventory search.  In this case, therefore, police must have had probable cause to search the trunk of Carter's car.

6

that persons recently had been seen loading items into the trunk of Carter's car and that the car's passenger compartment was strewn with marijuana.  Also, as he searched the back seat of the car, Sprinkle came across an especially strong smell of marijuana that he suspected emanated from the trunk.  Given these facts, Sprinkle had probable cause to search the trunk.

On arresting the car's occupants, Sprinkle had the right to search the entire passenger compartment, including the back seat. See New York v. Belton, 453 U.S. 454, 460 (1981); United States v. Milton, 52 F.3d 78, 80 (4th Cir. 1995).  Even without this right to conduct a search incident to arrest, Sprinkle certainly had probable cause to believe that he would find more marijuana around the passenger compartment.  He therefore had the right to be in the back seat, where he encountered the strong smell of marijuana which, given what Sprinkle then knew from searching the passenger compartment, most likely was coming from the trunk of the car.

Indeed, even if the Court sets aside the strong odor of additional marijuana, the presence of marijuana in the passenger compartment by itself provided Sprinkle with sufficient probable cause to believe that he would find additional marijuana in the trunk.  See, e.g., United States v. Loucks, 806 F.2d 208, 210-11 (10th Cir. 1986)(holding that once the officer found contraband in the passenger compartment, he had probable cause to search the

trunk for more of the same); United States v. Burnett, 791 F.2d 64, 67 (6th Cir. 1986) (holding that small amount of marijuana on floorboard of passenger compartment provided probable cause to search trunk). See also United States v. McGuire, 957 F.2d 310, 314 (7th Cir. 1992)(holding that an open container of alcohol in the passenger compartment gave police probable cause to search every part of the vehicle, including the trunk).[4] When all of that is considered in perspective of the fact that Sprinkle knew that police officers, quite recently, had seen persons loading objects into the trunk of Carter's car, Sprinkle's assessment respecting the contents of the trunk certainly was reasonable.

For these reasons, Sprinkle's search of the trunk did not violate the Fourth Amendment. The exclusionary rule therefore does not bar the admission of the evidence discovered in the trunk.

---

[4] This is so, even if Sprinkle did not specifically articulate these grounds of suspicion at the suppression hearing. In Terry v. Ohio, the Supreme Court held that the Fourth Amendment required "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. 1, 21 (1968). As the Fifth Circuit put it in applying Terry to a pat-down search, "Terry cannot be read to condemn a . . . search because it was made by an inarticulate policeman . . . , so long as it is clear that he was aware of specific facts which would warrant a reasonable person to believe [that the search was justified]." United States v. Tharpe, 536 F.2d 1098, 1101 (5th Cir. 1976) (en banc), overruled in part on other grounds, United States v. Causey, 834 F.2d 1179 (5th Cir. 1987) (en banc).

8

**CONCLUSION**

For the reasons set forth above, the Court concludes that Sprinkle did not violate the Fourth Amendment either when he stopped Carter's car, or when he searched the car's trunk. Consequently, Carter's MOTION TO SUPPRESS (Docket No. 9) will be denied.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record by facsimile and regular mail.

It is so ORDERED.

/s/
Robert E. Payne
United States District Judge

Richmond, Virginia
Date: April 5, 2007